Florence J. GILBERT, Roger L. Blair, Alvin L. Neal, Eunice M. Robinson, and Loretta L. London, Plaintiffs,

v.

Donna E. SHALALA, Secretary of the U.S. Department of Health and Human Services, Defendant.

Civ. A. No. 92–B–1464.

United States District Court, D. Colorado.

July 26, 1993.

Frederick W. Newall, Catherine Snow, Pikes Peak Legal Services, Colorado Springs, CO, Linda J. Olson, Legal Aid Soc., Denver, CO, for plaintiffs.

Chalk S. Mitchell, Asst. U.S. Atty., Denver, CO, Brian G. Kennedy, John Schumann, U.S. Dept. of Justice, Civil Div., Washington, DC, for defendant.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

At oral argument on defendant's summary judgment motion defense counsel aptly characterized this action as "a lawsuit in search of a plaintiff". The material facts are undisputed. As a matter of law plaintiffs lack standing to maintain this action. I, therefore, grant defendant's motion for summary judgment. Consequently, I need not address plaintiffs' pending motions for class certification and summary judgment.

Throughout the 1980's plaintiffs applied for social security disability insurance benefits under Title II of the Social Security Act (42 U.S.C. §§ 401–433) and supplemental security income under Title XVI of the Social Security Act (42 U.S.C. §§ 1381–1383d). Plaintiffs claim the Social Security Administration's (SSA) denial notices were so deficient as to violate their procedural due process rights.

An applicant for social security benefits must pursue a series of administrative appeals if an application for benefits is denied.

The process begins with the filing of an application for benefits. 20 C.F.R. §§ 404.-603, 404.614, 416.305, and 416.325. If the SSA denies the application the applicant has sixty days after receipt of the denial notice to request reconsideration. 20 C.F.R. §§ 404.-909 and 416.1409. If the SSA denies reconsideration the applicant may request a de novo hearing before an Administrative Law Judge (ALJ). 42 U.S.C. §§ 405(b)(1) and 1383(c)(1); 20 C.F.R. §§ 404.933 and 416.-1433. This hearing must be requested within sixty days after the applicant receives the denial of the request for reconsideration. *Id.* If the ALJ denies the applicant benefits, the applicant then has sixty days after receipt of the ALJ's decision to request review by the Social Security Administration Appeals Council. 20 C.F.R. §§ 404.968 and 416.1468. An applicant may then file an action in federal district court within sixty days after receiving a final decision of the Secretary of Health and Human Services. 42 U.S.C. § 405(g).

The SSA denied all plaintiffs' initial applications for benefits. Only plaintiffs Florence J. Gilbert (Gilbert) and Eunice M. Robinson (Robinson) requested reconsideration of the denials of their applications for benefits. After denial of her request for reconsideration, Gilbert failed to request a hearing before the ALJ. Robinson appealed throughout the administrative process and obtained a favorable decision.

Plaintiffs allege they did not pursue further administrative review because the denial notices led them to believe the decision was not final and could be reviewed later by filing a new application. They allege they understood the notices to say that with the filing of a new application they would be entitled to reopen their earlier applications and obtain benefits from the date of their original application.

The notices denying the applicants Title II benefits stated, in pertinent part: "If you do not request reconsideration [or 'if you do not request a hearing'] of your case within the prescribed time period, you still have the right to file another application at any time" or; "If you do not request reconsideration [or 'if you do not request a hearing'] within

the sixty day time limit, you still have the right to file another application at any time. A new application is not the same as an appeal of this determination".

The notices denying Title XVI benefits stated in relevant part:

> If your condition gets worse, you may file a new application for Social Security Income payments.

> If at anytime in the future you think you qualify for payment, please contact us immediately about filing a new application. We cannot make payment for any month before the month in which you apply.

or;

> If at anytime in the future you think you qualify for payment, please contact us right away about filing a new application. This is important to you because we cannot pay for any day before the day in which you file an application or the day you meet all the requirements, whichever is later.

A leaflet enclosed with each denial notice explained in detail the appeal process. However, it mentioned nothing about a decision becoming final or the effect of a decision becoming final if an applicant fails to request reconsideration or appeal timely.

An applicant who fails to request reconsideration or appeal within sixty days generally is prohibited from reopening an application. To obtain benefits the applicant must file a new application. The new application, however, will not entitle the applicant to benefits retroactively from the date of the first application. A new application also does not reopen a former application from which no appeal was taken. Thus, benefits do not begin to accrue until a new application is filed.

Plaintiffs contend the notices failed to inform them that the denials would be final unless appealed within sixty days. They maintain the notices are ambiguous whether the filing of a new application allows them to reopen their initial application and acquire benefits retroactively from the date of their first application. Plaintiffs claim, therefore, that the misleading nature of the denial notices violated their due process rights.

■ Judicial power is limited to cases and controversies arising under the Constitution. *U.S. Const.* art. III § 2, cl. 1. Standing to sue is an essential and unchanging part of the case-or-controversy requirement of Article III. *Lujan v. Defenders of Wildlife*, 504 U.S. ——, ——, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351, 364 (1992).

> [T]he irreducible constitutional minimum of standing contains three elements: First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally-protected interest which is (a) concrete and particularized ... and (b) "actual or imminent, not 'conjectural' or 'hypothetical'"....  Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... traceable to the challenged action of the defendant, and not ... the result of the independent action of some third party not before the court." ... Third it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." ...

*Lujan*, 504 U.S. at ——, 112 S.Ct. at 2136, 119 L.Ed.2d at 364 (citations, footnote, and brackets omitted). Plaintiffs bear the burden of proving standing just like any other issue on which they bear the burden of proof.

> The party invoking federal jurisdiction bears the burden of establishing these elements.... Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.... At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we "presume that the general allegations embrace those specific facts that are necessary to support the claim,".... In response to a summary judgment motion, however, the plaintiff can no longer rest on such "mere allegations," but must "set forth" by affidavit or other evidence "specific facts," ... which for purposes of the summary judgment motion will be taken to be true. And at

the final stage, those facts (if controverted) must be "supported adequately by the evidence adduced at trial," ...

*Lujan*, 504 U.S. at ——, 112 S.Ct. at 2136, 119 L.Ed.2d at 364–365 (citations and brackets omitted).

Summary judgment shall enter where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Summary judgment is appropriate where the nonmoving party fails to make a showing sufficient to establish an essential element of its claim and on which it bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552; *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir.1992).

Once the moving party demonstrates an absence of evidence supporting an essential element of the plaintiff's claim, the burden shifts to the plaintiff to show a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Summary judgment is aimed at piercing the allegations of a complaint to assess the proof to ascertain whether there is a genuine need for a trial. *Burk v. K Mart Corp.*, 956 F.2d 213, 215 (10th Cir.1991). Therefore, a claimant cannot rely on the allegations of its complaint in responding to a summary judgment motion. *Burk*, 956 F.2d at 215. Rather, in responding to a summary judgment motion the nonmovant must point to specific facts in an affidavit, deposition, answers to interrogatories, admissions, or other similar admissible evidence demonstrating the need for a trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *Mares*, 971 F.2d at 494. "Affidavits and evidence offered by the nonmovant must create a genuine issue for trial; viewing the evidence in a light most favorable to the nonmovant, it is not

enough that the evidence be merely colorable or anything short of significantly probative." *Handy v. Price,* 996 F.2d 1064, 1064 (10th Cir.1993).

The operative inquiry is whether, based on all the documents submitted, and viewing the tendered evidence in the nonmovant's favor and drawing all reasonable inferences from this evidence in the nonmovant's favor, a reasonable factfinder could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Mares,* 971 F.2d at 494.

The SSA denied Gilbert's request for reconsideration of the denial of her application for widow disability benefits. She failed to take the next step and request a hearing before the ALJ. Her denial notice explained that to qualify for widow disability benefits her disability must arise within seven years after the death of her spouse. Gilbert thought this provision allowed her to reapply for benefits anytime within the seven year period and receive benefits retroactively from the date of her first application. (Gilbert depo. p. 23 ll. 8–18.) Laboring under this belief Gilbert did not request a hearing before the ALJ after the SSA denied her request for reconsideration. (Gilbert depo. p. 23 ll. 16–18.) Nothing in this notice caused Gilbert to believe that she would be giving up her benefits if she failed to request a hearing. (Gilbert depo. p. 23 ll. 19–24.) Gilbert understood, however, that if she did not apply for reconsideration she would lose her rights. (Gilbert depo. p. 13 ll. 19–21.) She did not consider the notice denying her request for reconsideration to be misleading. (Gilbert depo. 14 ll. 17–22.)

The language concerning the seven year time limit for applying for widow disability benefits upon which Gilbert allegedly relied, is not the focus of Gilbert's due process violation claim. The effect of this language is not at issue here. Rather, Gilbert merely alleges that the denial notice's language quoted at page 3, *supra,* was misleading and caused her to believe that SSA's decision denying her benefits was not final. There is no showing that Gilbert's failure to

appeal is fairly traceable to this language. She produces no evidence tending to show that the questioned language in the denial notice caused her to refrain from requesting a hearing before an ALJ. Thus, there is no showing of a causal connection between the SSA's notice and Gilbert's alleged injury. Consequently, Gilbert lacks standing to challenge the notice.

Plaintiff Roger L. Blair (Blair) applied for benefits once in Colorado and once in Arkansas. He appealed the Arkansas denial of benefits. The denial of his Arkansas application is not at issue here. He did not request reconsideration of his Colorado denial of benefits. Blair's Colorado denial notice said that he could not receive benefits because he was capable of working. Also, someone at the SSA told him that he could not apply for social security benefits while he was pursuing worker's compensation benefits. (Blair depo. p. 17 ll. 3–13.) Other than disputing the SSA's determination that he could work and that he could not receive social security benefits while pursuing worker's compensation benefits—which is not the subject of the dispute here—Blair said that the denial notice was not misleading. (Blair depo. p. 16 ln. 20—p. 17 ln. 25; p. 24 ll. 11–13.) Blair later stated, however, that "the only thing misleading to me about it is, you can't apply again, and then you can. That's the only misleading part of it, I guess." (Blair depo. p. 35.)

This statement is not significantly probative that the notice caused Blair to forego further administrative review. It intimates nothing concerning whether Blair thought he could obtain benefits retroactively from the date of his first application by refiling a new application later. This ambiguous testimony is mere colorable support for Blair's claim. Furthermore, Blair admits that the denial was not misleading. This statement, taken in conjunction with his other unambiguous testimony, is insufficient to persuade a reasonable trier of fact that Blair was induced by the notice to refrain from pursuing further administrative review. Blair's evidence fails to create a genuine issue for trial concerning the causal connection between his failure to appeal and the language of the

denial notice. Accordingly, he has failed to demonstrate that he has standing to maintain this action.

Plaintiff Alvin L. Neal (Neal) applied for benefits in 1983 and 1987. He requested reconsideration of neither denial. Since the filing of this action, however, the SSA has reopened Neal's application. Because the SSA has reopened Neal's application he has received all the relief he can obtain here. Accordingly, he has suffered no injury in fact. Furthermore, his claim is moot.

Likewise, Robinson has suffered no injury in fact and her claim is also moot. Regardless of the allegedly defective notices, she timely requested reconsideration and a hearing. She eventually received a favorable determination. Because Robinson sustained no injury as a result of the allegedly defective notices there is no live controversy before me in relation to her claim.

Plaintiff Loretta L. London (London) applied for benefits in 1983, 1984, 1989, and 1991. Her 1991 claim is pending before an ALJ. The SSA denied her 1983, 1984, and 1989 applications. She never moved for reconsideration. Because of her amnesia London cannot say whether she was misled or confused by the denial notices. (London affidavit ¶ 3.)

London presents no evidence tending to show that the notices caused her not to seek reconsideration. Absent some evidence of causal connection between the SSA's notices and her failure to seek administrative review any determination of causation rests upon pure speculation.

Citing *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972) plaintiffs argue alternatively their reliance on the allegedly defective notices need not be proven because reliance can be inferred if the unrevealed information was material. *Affiliated Ute* was an action under section 10(b) of the 1934 Securities Exchange Act against bank insiders for fraud. The insiders, who owed the plaintiffs a fiduciary duty, failed to disclose material facts about the value of plaintiff's stock before inducing them sell their stock. The Court stated:

Under the circumstances of this case, involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision.... This obligation to disclose and this withholding of a material fact establish the requisite element of causation in fact....

*Affiliated Ute*, 406 U.S. at 153–154, 92 S.Ct. at 1472 (citations omitted).

█ This rule is peculiar to the federal securities laws and has no place in the standing context here. I cannot presume plaintiffs' reliance on the notices merely because the concealed information was allegedly important. Rather, at this juncture plaintiffs must show that there is a genuine issue for trial regarding the causal connection between their alleged injury and the SSA's denial notices. Plaintiffs have not satisfied their burden as to this fundamental requirement. As a matter of law they have no standing to maintain this action.

Accordingly, IT IS ORDERED that defendant's motion for summary judgment is granted and plaintiffs' claims are dismissed with prejudice. Each party shall bear its own costs.